## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mark O.,

              Petitioner,

v.

Todd Blanche, et al.,

              Respondents.

**ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS**

Civil File No. 26-02448
(MJD/EMB)

Jolena Marie Zabel, Kristin K. Zinsmaster, Matthew J. Rubenstein, Jones Day, Counsel for Petitioner.

David W. Fuller, Derek Ganzhorn, Assistant United States Attorneys, Counsel for Federal Respondents.

This matter is before the Court on Petitioner Mark O.'s Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner claims he is currently unlawfully detained in violation of the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause. Respondents challenge Petitioner's arguments, maintaining that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

## I.    FACTS[1]

Petitioner is a 43-year-old citizen of Ukraine who has resided in the United States since approximately May 2023. (Doc. 1 ¶¶ 13, 19.) On May 6, 2023, Petitioner arrived in the United States at the John F. Kennedy Airport in Queens, New York. (Id. ¶ 20.) Upon his arrival, the federal government granted him humanitarian parole through the Uniting for Ukraine Program. (Id. ¶¶ 19, 21.) As part of this program, Petitioner received a social security number, obtained work authorization, paid taxes, and worked several part time jobs to support himself. (Id. ¶ 22.)

His parole was valid for a two-year period. (Id. ¶ 1.) In early 2025, Petitioner applied to renew his parole status; his application remains pending. (Id. ¶ 22; Doc. 5-2.) Petitioner also applied for Temporary Protected Status, which is also presumably pending. (Doc. 1 ¶ 23; Doc. 5-2.)

On March 19, 2025, ICE officers arrested Petitioner for trespassing and transported him to the Freeborn County Adult Detention Facility. (Doc. 1 ¶ 1; Doc. 4 at 1.) Petitioner is currently in removal proceedings. (Doc. 4 at 1.)

---

[1] Facts not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

Petitioner filed this instance Petition for Writ of Habeas Corpus on May 1, 2026. (Id.) The Court issued an Order to Show Cause on May 4, 2026, requiring Respondents to respond to Petitioner's petition and certify the "true cause and proper duration of Petitioner's confinement." (Doc. 3.) On May 7, 2025, Respondents responded to the Petition, and on May 11, 2025, Petitioner replied. (See Docs. 4, 6.)

## II.    DISCUSSION

Petitioner argues that his detention is unlawful on the following grounds: 1) as a violation of Petitioner's Fifth Amendment Due Process Rights, and 2) as a violation of the INA.

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  District courts have jurisdiction to hear habeas challenges to immigration-related detention.  Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

3

Id. at 693 (citations omitted).  This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."  Id.  The petitioner bears the burden to prove illegal detention by a preponderance of the evidence.  See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B.  Effect of Avila v. Bondi on Petitioner's Claims**

Petitioner argues that the government's conclusion that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2) is "incorrect as a matter of statutory interpretation" and that § 1226(a) governs. (Doc. 1 ¶¶ 4, 60–80.) Respondents argue that the Eighth Circuit's decision in Avila v. Bondi precludes this argument. (Doc. 4 at 2.)

On March 25, 2026, the Eighth Circuit decided Avila v. Bondi and found that those noncitizens present in the United States who have not been admitted – regardless of whether they are arriving at the border in that moment or have been living in the United States for years – are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). 170 F.4th 1135–38 (8th Cir. 2026). Petitioner acknowledges that this Court is bound by Eighth Circuit precedent and notes that he makes this argument "in order to preserve it for appeal or in the event

4

that Herrera Avila is vacated or abrogated by the en banc Eighth Circuit or Supreme Court." (Id. ¶ 60.)

The Court agrees that the Eighth Circuit's decision in Avila forecloses Petitioner's statutory claim. Avila, however, does not preclude constitutional claims. The Court therefore turns to Petitioner's due process arguments.

### C. Fifth Amendment Due Process

Petitioner applied the Mathews v. Eldridge balancing test to argue that his continued detention violates his constitutional due process rights guaranteed by the Fifth Amendment. (Doc. 1 ¶¶ 42–59.) Respondents argue in response that Petitioner incorrectly frames his claim as a procedural due process claim when it really is a substantive due process claim. (Doc. 4 at 3–9.) In the alternative, Respondents argue that Petitioner's procedural due process claim is precluded by Supreme Court and Eighth Circuit case law. (Id. at 9–19.) Finally, Respondents argue that even if the Court applies the Mathews factors, Petitioner's claim "must fail." (Id. at 19–24.)

### 1. Petitioner's Fifth Amendment Protections

First, the Court feels it necessary to acknowledge both that Petitioner is entitled to due process of law under the Fifth Amendment. The Fifth

Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.  The United States Supreme Court has made clear that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; see also Trump v. J. G. G., 604 U.S. 670, 673 (2025) ("'[i]t is well established that the Fifth Amendment entitles aliens to due process of law'" in the context of removal proceedings. (quoting Reno v. Flores, 507 U.S. 292, 306, (1993)). Therefore, Petitioner is protected by the constitutional protections contained within Fifth Amendment.

### 2. Procedural vs. Substantive Due Process

Respondents first argue that Petitioner incorrectly marks his claim as a procedural due process claim, when instead, he proffers a substantive due process claim because he is "challenging Congress's substantive decision to mandate detention pending removal proceedings." (Doc. 4 at 4.) The Court acknowledges that Petitioner's due process claims do invoke the statutory provisions requiring detention under 8 U.S.C. § 1225(b)(2). However, "Petitioner[] undoubtably also argued that [his] detention without bond

deprived [him] of [his] liberty without due process of law." United States. Lopez-Campos v. Raycraft, No. 25-1965, 2026 WL 1283891, at *12 (6th Cir. May 11, 2026). Because procedural due process challenges specifically address the "adequacy of the procedures" used to deprive someone of their liberty, the Court will consider Petitioner's procedural due process challenge as properly raised. Mathews, 424 U.S. at335.

### 3. Supreme Court & Eighth Circuit Precedent

Respondents also argue that Supreme Court and Eighth Circuit precedent precludes Petitioner's procedural due process claim. (See Doc. 4 at 9–14.) For instance, Respondents rely largely on the Eighth Circuit's decision in Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024) and the Supreme Court's decisions in Demore v. Kim, 538 U.S. 510 (2003) and DHS v. Thuraissigiam, 591 U.S. 103 (2020) to assert that the detention statute at issue satisfies due process. (Id. at 9–13.) However, these cases are inapposite.

Take, for instance, Thuraissigiam, where petitioner Thuraissigiam was detained immediately after entering the country at the southern border. DHS v. Thuraissigiam, 591 U.S. 103, 114 (2020). He was detained for expedited removal pursuant to 8 U.S.C. § 1225. Id. The Supreme Court determined that

Thuraissigiam was not entitled to a bond hearing because a noncitizen in his position "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 140.

The petitioner in Thuraissigiam, however, "was apprehended 25 yards from the border and was thereafter continuously detained." Manuel G. v. Blanche, No. 26-cv-2385, 2026 WL 1256358, at *4 (D. Minn. May 7, 2026). The Court is persuaded by the Sixth Circuit's recent decision in Lopez-Campos, where the Court determined that the factual predicate for Thuraissigiam "merely reinforces our longstanding understanding that noncitizens 'on the threshold of initial entry stand[] on a different footing' than those who have 'passed through our gates.'" 2026 WL 1283891, at *12 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)). Because Petitioner here was paroled into the United States and had been living here for three years before he was detained, the holding in Thuraissigiam does not apply to him.

Further, the Court disagrees with Respondents' position that Banyee and Demore foreclose a procedural due process analysis. In Banyee v. Garland, the Eighth Circuit determined that a noncitizen's continued detention during his pending appeal of a removal order based on a criminal conviction did not

implicate due process. 115 F.4th at 933. Petitioner Banyee had been detained pursuant to 8 U.S.C. 1226(c), which permits mandatory detention based on convictions for certain enumerated offenses, and specifically due to his conviction for robbery with a dangerous weapon, a "crime of violence," which qualified as an "aggravated felony" under § 1226(c). Id. at 930 (citing § 1226(c)(1)(B)). While he appealed the immigration judge's determination that his conviction was a qualifying felony, petitioner remained detained for over a year. Id. Petitioner filed a habeas petition, arguing that his continued detention violated due process. Id. at 930–31.

The Eighth Circuit denied Banyee's petition, determining that he was not entitled to a bond hearing pending his deportation. Id. at 931. The court reasoned that the length of his detention was not an issue, instead stating that "what matters is that detention pending deportation 'ha[s] a definite end point'— deporting or releasing the alien." Id. at 930, 932 (cleaned up) (citing Demore v. Kim, 538 U.S. at 528–29 (drawing the same definite-versus-indefinite distinction); Zadvydas, 533 U.S. at 697). Further, the Court emphasized that the petitioner himself was the reason that he did not have a final order of removal (i.e., the decision to appeal was the reason for his own detention) and made broad due

9

process pronouncements. Id. at 933 ("the government can detain an alien for as long as deportation proceedings are still 'pending.'") (quoting Demore, 538 U.S. at 527).

Petitioner here is detained pursuant to § 1225(b)(2), a materially different statutory scheme governing applicants for admission to the country, not individuals already deemed removable based on convictions for serious criminal offenses. This Court, along with others in this district, have found that the court's focus in Banyee on mandatory detention pursuant to § 1226(c), as opposed to § 1225(b)(2) is distinguishable from the facts here. See Orlando R.V.V. v. Blanche, No. 26-cv-1903, Doc. No. 11 (MJD/SGE) (D. Minn. Apr. 28, 2026) ("The Banyee court's analysis is rooted in detention under § 1226(c), and its reliance on Supreme Court precedent reinforces that limited scope."); see also Axel J.M.C. v. Stanski, No. 26-cv-2281 (JRT/EMB), 2016 WL 1171344, at *3 (D. Minn. Apr. 29, 2026) (finding that unlike the statutory framework in Banyee, "Respondents' purported basis for detention is § 1225(b)(2)(A), a different provision only recently interpreted by the Government to permit mandatory detention."); Manuel G. v. Blanche, No. 26-cv-2385, 2026 WL 1256358, at *4 (D. Minn. May 7, 2026) ("Respondents' purported basis for [Petitioner's] detention is §

1225(b)(2)(A), not § 1226(c), which distinguishes this case from <u>Banyee</u> and <u>Demore</u>.").

Although both statutes provide for mandatory detention under certain circumstances, the statutory schemes at issue require mandatory detention on considerably different factual circumstances. For instance, in enacting § 1226(c), Congress made specific, categorical judgments about the dangerousness and flight risks posed by noncitizens convicted of certain enumerated offenses. Unlike the Petitioner in <u>Banyee</u>, who was convicted of one of those enumerated offenses, the Petitioner in this case fled war in his home country, was paroled, and has been living in the United States for three years.

Moreover, there is no reason for the Court to read the Eighth Circuit's broad Due Process pronouncements in <u>Banyee</u> as anything but cabined to the statutory and factual context in which they arose. The <u>Banyee</u> court's analysis is rooted in detention under § 1226(c), and its reliance on Supreme Court precedent reinforces that limited scope. <u>Demore v. Kim</u>, another case upon which Respondents rely, similarly permitted mandatory detention tied to certain criminal convictions under § 1226(c), while <u>Zadvydas</u> established a presumptive permissible time period for the detention of those with post-removal orders. <u>See</u>

Demore, 538 U.S. at 510 Zadvydas, 533 U.S. at 701. Petitioner's detention arises under a separate statutory provision with an entirely different factual predicate and Petitioner is not subject to a final removal order.

Therefore, now the Court must consider what due process requires in Petitioner's circumstances. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."); Bus. Commc'ns, Inc. v. U.S. Dep't of Educ., 739 F.3d 374, 380 (8th Cir. 2013).  The flexibility of due process "calls for such procedural protections as the particular situation demands."  Morrissey, 408 U.S. at 481. Thus, "identification of the specific dictates of due process generally requires consideration of three distinct factors."  Mathews, 424 U.S. at 335.

### 4.  Mathews v. Eldridge Balancing Test

Turning to the merits of Petitioner's claim, to determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1], the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 321.

The first factor, Petitioner's private interest, weighs heavily in Petitioner's favor. The Supreme Court has referred to the interest in being free from physical detention the "most elemental of liberty interests." See Hamdi v. Rumsfield, 542 U.S. 507, 529 (2004); see also Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."). Petitioner is currently detained in Freeborn County Adult Detention Facility, where he has been for two months in circumstances that very likely mirror "criminal incarceration." See Gunaydin v. Trump, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) ("[w]hen assessing [the first factor], courts consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration." (citing Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021); Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020)).

Further, Petitioner's interest is only further heightened by the fact that Petitioner was previously granted humanitarian parole, presumably after consideration of the potential danger and flight risk he posed. See Wu v.

13

Stamper, No. 26-cv-90, 2026 WL 608286, at *6 (D. Me. Mar. 4, 2026) ("[Petitioner's liberty interest] is heightened by the fact that the Government previously found him neither a flight risk nor a danger to the community when granting his initial parole."). Since moving to the United States through the Uniting for Ukraine program, Petitioner obtained work authorization, got a social security number, paid taxes, and contributed to the economy through his work. (Doc. 1 ¶¶ 21–22.) By his continued detention, he is undoubtedly experiencing the deprivations of incarceration, like the loss of companionship and income. Therefore, considering Petitioner demonstrates extensive interests affected by his ongoing detention, the first Mathews factor favors Petitioner.

The second Mathews factor requires to the Court to consider the risk of an erroneous deprivation of Petitioner's liberty as well as consider "the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." Selvin Adonay E.M. v. Noem, 817 F. Supp. 3d 750, 734 (D. Minn. 2025) (citing Mathews, 424 U.S. at 335). This factor also weighs heavily in favor of Petitioner.

As stated, Petitioner was previously released on humanitarian parole based presumably on a determination that Petitioner was not a danger to the

14

community or a flight risk. (See Doc. 1 ¶¶ 15–17.) Courts in this district have found that for those previously released, without an individual assessment, "the risk of erroneous deprivation is high." See e.g., David J.C.P. v. Blanche, No. CV 26-2181 (DWF/ECW), 2026 WL 1102725, at *2 (D. Minn. Apr. 23, 2026).

Further, the fact that Petitioner's previous parole has since expired does not change the equation. This Court has specified that "the fact remains that Petitioner was previously released, which 'in and of itself reflects a determination that the individual is neither a flight risk nor a danger to the community,' and also means 'there is a very high risk of erroneous deprivation of liberty absent an individualized custody determination.'" Orlando R.V.V., No. 26-cv-1903, Doc. No. 11(D. Minn. Apr. 28, 2026) (citing Rodriguez Brizuela v. Noem, No. 5:26-CV-0279-JKP, 2026 WL 752257, at *5 (W.D. Tex. Mar. 12, 2026) and Juan C.R.R. v. Bondi, et al., No. 26-01282 (MJD/DJF), 2026 WL 752462, at *4 (D. Minn. Mar. 17, 2026)). What matters is that Petitioner was released based presumably on a determination that he was not a danger to the community or a flight risk, and that the government has not provided any reason for why these circumstances may have changed. The government did state that Petitioner was arrested for

15

"trespassing" but has provided no additional information that raises legitimate changed circumstances to justify his detention.

Even if the Court considers Petitioner a noncitizen present in the United States who had not been admitted or paroled, he suffers a substantial risk of erroneous deprivation of liberty in this situation. "[A] substantial risk of erroneous deprivation of liberty exists" for "a noncitizen who was arrested within the United States and lacks any prior release by immigration authorities, but who has established a life here in the United States" when he is detained without bond.  Rodriguez Brizuela, 2026 WL 752257, at *6 (citation omitted). Therefore, the second Mathews factor also favors Petitioner.

The third Mathews factor requires the Court to consider the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. Respondents here argue that they "have strong historical and practical interests in seeing Congress's will given effect." (Doc. 4 at 21.)  Regardless, the Court is persuaded by Alvarez-Rico v. Noem, where the Southern District of Texas, weighing comparable facts in the aftermath of the

Fifth Circuit's decision in <u>Buenrostro-Mendez v. Bondi</u>, No. 25-20496, 2026 WL

323330 (5th Cir. Feb. 6, 2026), determined that:

> [T]his [government] interest is not served by summarily re-detaining
> noncitizen "applicants for admission" whom the government <u>previously</u>
> <u>determined were not flight risks or dangers to the community</u> without a
> showing of changed circumstances. Indeed, given the high costs of
> detention, the fiscal and administrative burdens of providing noncitizens
> in these circumstances with some form of hearing pales in comparison
> with the burdens of re-detaining thousands of noncitizens who were
> previously released on recognizance.

No. 4:26-CV-00729, 2026 WL 522322, at *6 (S.D. Tex. Feb. 25, 2026) (emphasis

added.)

Moreover, Petitioner did not go underground and hide from authorities

for the three years he has remained in the country. Instead, he applied to renew

his parole and applied for Temporary Protected Status. (Doc. 1 ¶¶ 22–23; Doc. 4

at 1.) He was obviously then on Immigration's radar, and the evidence does not

establish that Petitioner was trying to evade authorities at all.

Granting Petitioner a bond hearing – which is hardly an "administrative

burden"– will give Petitioner an opportunity to hear from Respondents an

explanation as to what circumstances changed that now require his detention.

This "due process safeguard will reduce the risk of erroneous deprivation

17

without imposing significant burdens on the Government." <u>Selvin</u>, 817 F. Supp. 3d at 734.

The above analysis leaves the Court with but one possible conclusion: the factors all weigh in Petitioner's favor. For these reasons, the Court concludes that mandatory detention pursuant to § 1225(b)(2), as applied to Petitioner in this case, violates his constitutional right to procedural due process. The appropriate remedy for such constitutional deprivation is to provide him with an opportunity to be heard. In this case, that means a bond hearing.

### III.   ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.   The Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED IN PART** as follows:

   a.   Petitioner's detention under 1225(b)(2) violates his due process rights.

   b.   Respondents are ordered to provide Petitioner with a bond hearing within one week after the issuance of this Order;

   c.   Respondents are ordered to file notice of such bond hearing directly with the Court within two (2) hours of its scheduling; and

      d. If a bond hearing takes place that results in Petitioner's release, Respondents are ordered to:

          i. Release Petitioner into Minnesota;

          ii. At a safe time and place communicated at least two (2) hours in advance to Petitioner's counsel; and

          iii. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys;

      e. If a bond hearing does not take place within one week, the Respondents are ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in 2(c); and

2. Within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody, Respondents must file a status report with the Court detailing the results of the Bond Hearing or its actions related to release; and

3. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 18, 2026          s/Michael J. Davis
                                            Michael J. Davis
                                            United States District Court